IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| NASRIN JAJOU, | § | |
| *Plaintiff* | § | |
| | § | SA-20-CV-00839-XR |
| v. | § | |
| | § | |
| SAFECO INSURANCE COMPANY OF | § | |
| INDIANA, | § | |
| *Defendant.* | § | |

## ORDER

On this date, the Court considered Defendant's Motion for Summary Judgment Regarding Extra-Contractual Claims (ECF No. 33), Plaintiff's response (ECF No. 42), Defendant's reply (ECF No. 45), and Plaintiff's surreply (ECF No. 48). For the reasons discussed more fully below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.

## BACKGROUND

Plaintiff Nasrin Jajou ("Jajou") seeks coverage for damages to her residential property's roof pursuant to a renewed insurance policy she purchased from Defendant Safeco Insurance Company of Indiana ("Safeco"). *See* ECF No. 20. Jajou first insured her property with Allstate.[1] *See* ECF No. 33-15, at 15:3–4. Sometime thereafter, she switched insurance companies and insured her property with Farmers. *See id.* at 19:1–4. Farmers then sold Jajou's contract to Safeco. *See id.* at 20:2–3, 22–24. On or about November 7, 2017, Jajou received a homeowners insurance quote from Safeco. *See* ECF No. 42-11, at 3. The quote summarized the primary and optional coverages, deductibles, and premiums Safeco offered, and proposed a policy period from November 7, 2017

---

[1] In 2015, Jajou submitted a claim to Allstate reporting storm-caused leaks inside her property and requesting coverage for the property's roof. *See* ECF No. 33-15, at 14:23–15:20. Allstate replaced the property's entire roof. *See id.* at 15:21–16:3.

to November 7, 2018. *See id.* at 3–4. On or about September 27, 2018, Jajou renewed her policy directly with Safeco. *See* ECF No. 33-3, at 3. The policy provided coverage for, among other perils, hail and windstorm damages from December 1, 2018 to December 1, 2019. *Id.* at 3, 29. The policy, however, excluded cosmetic loss or damage, "meaning any loss that is limited to the physical appearance of a metal roof surface." *Id.* at 55.

On April 13, 2019, a hailstorm damaged Jajou's property. ECF No. 42, at 1; *see also* ECF No. 33-6, at 2. On April 15, 2019, Jajou submitted a claim to Safeco requesting coverage.[2] *See* ECF No. 33-4, at 6. Two days later, Amy Clark-Knighton ("Clark-Knighton") from Safeco's Claims Department established initial contact with Jajou. *Id.* During the initial contact, Clark-Knighton and Jajou discussed, among other items, the claim, the reported damages, and the policy's cosmetic-damage exclusion. *Id.* On April 22, 2019, Clark-Knighton, along with a ladder assist contractor Jajou had hired, inspected the property. *See* ECF No. 33-4, at 5. Clark-Knighton and the contractor inspected the property's exterior, roof, and attic-side of the roof decking. *See id.* Clark-Knighton did not inspect the property's interior because Jajou did not initially report any interior damages. *See id.*; *see also* ECF No. 33-15, at 22:3–4.

Based on her inspection, Clark-Knighton concluded that the property's roof had sustained hailstorm damages.[3] *See* ECF No. 33-4, at 5. In Clark-Knighton's words, "Roof inspection revealed hail damage to copper standing seam[.]" *Id.* Clark-Knighton also noted that the contractor had found "splintering in the roof decking from hail impacts." ECF No. 33-2 ¶ 5 (citing ECF No.

---

[2] In her response, Jajou submits that she "filed a claim of loss with Safeco on or about April 14, 2019." ECF No. 42, at 2. However, the evidence she cites to support her assertion fails to confirm that she submitted a claim to Safeco for coverage on that day. *See* ECF No. 42-2, at 7:5–9. In fact, Jajou testified at her deposition that she could not remember when she first spoke with Safeco about the reported damages and that she did so probably within a few days of when the hailstorm occurred. *See* ECF No. 33-15, at 21:9–13.

[3] Clark-Knighton also concluded that hail had damaged "gutter/downspouts, built-in-grill, lamp post, and a detached charcoal grill[.]" ECF No. 33-2 ¶ 5 (citing ECF No. 33-4).

33-4). However, Clark-Knighton observed no "roof leaks or damage to roof seams." *Id.* (citing ECF No. 33-4). As a result, she determined that the roof damages were cosmetic and excluded under Jajou's policy. *See* ECF No. 33-4, at 5. Clark-Knighton accordingly completed an estimate of the damages totaling $13,409.39 and issued a $1,876.51 check to Jajou, accounting for her deductible and non-recoverable depreciation. *See* ECF Nos. 33-5, 33-6.

On April 23, 2019, Clark-Knighton sent Jajou a letter, informing her that Safeco would not cover any damage to her property's roof pursuant to the policy's cosmetic-damage exclusion. *See* ECF No. 33-6, at 2. In May 2019, Jajou responded by sending Safeco a letter that requested reconsideration of its decision not to cover the hailstorm damages to her property's roof.[4] *See* ECF No. 33-7, at 2. In her letter, Jajou informed Safeco that she had "met with several individuals including real estate appraisers, structural engineers and construction professionals who all agree that [her roof has] structural damage[,]" not merely cosmetic damage. *Id.* Therefore, Jajou explained, she would "not settle for anything less than a new roof[.]" *Id.* Jajou also expressed that, in her view, "[t]he roof was not properly checked at the first inspection." *Id.* As a result, Jajou asked Safeco to escalate her claim and, once again, inspect her property, including the roof. *Id.*

In June 2019, Jajou sent Safeco a roofing agreement she had signed with Rooftop Restoration.[5] *See* ECF No. 33-8. The agreement stated that Rooftop Services would "remove and replace the copper roof and repair stucco" at Jajou's property in exchange for $250,803.08.[6] *See*

---

[4] Doug Lehr, a claim specialist with Safeco at the time, submits that Jajou sent the letter on May 27, 2019. *See* ECF No. 33-2 ¶ 6. The claim file, however, indicates that Safeco received Jajou's letter by email on May 29, 2019. *See* ECF No. 33-4, at 4. The letter itself does not include a date. *See* ECF No. 33-7, at 2. Regardless, the evidence shows that Jajou sent the letter at issue sometime in May 2019.

[5] Lehr submits that Jajou also sent a photo report. *See* ECF No. 33-2 ¶ 6. The exhibit cited as purportedly including the photo report, however, only contains the signed roofing agreement. *See* ECF No. 33-8. It appears that the photo report Lehr cites is Exhibit A-2 included in Jajou's response. *See* ECF No. 42-3.

[6] The agreement states that an individual by the name of Justin Fischer would pay Rooftop Restoration. *See* ECF No. 33-8, at 3. The Court assumes this was a typographical error that was intended to read "Nasrin Jajou."

*id.* at 1, 3. In response, Safeco reopened Jajou's claim and assigned Donan Engineering to reinspect the property's roof. *See* ECF No. 33-2 ¶ 6 (citing ECF No. 33-4); *see also* ECF No. 42-6, at 2. Noting that the property's roof is a four-story steep metal roof, Stephen Gordon ("Gordon"), engineer at Donan Engineering, asked Safeco if he could use a drone to inspect the roof. ECF No. 42-6, at 2. Gordon advised Safeco that the drone would cost approximately $500. *Id.* "The other option[,]" Gordon explained, "is to hire a lift that would give [him] access to the other portions of the roof but those are much more expensive and around the $1,500 range." *Id.* Safeco directed Gordon to "move forward with the drone." *Id.* On June 25, 2019, Gordon reinspected the property's roof with a drone. *See* ECF No. 33-2 ¶ 6; *see also* ECF No. 33-9, at 3.

On July 1, 2019, Gordon prepared a report for Safeco with his findings. *See* ECF No. 33-9. In his report, Gordon documented his observations of the property and the weather data for April 13, 2019. *See id.* at 4–5. The report also explained the key concepts Gordon relied upon to form his conclusions; these included collateral indicators of hail impact, clean spots, hailstone energy, hail damage to metal roofing, and wind damage to metal roofs. *See id.* at 5–8. Based on his observations, relevant weather data, and key concepts, Gordon concluded that "[n]o portions of the roof panels or panel seams are punctured or penetrated due to the hail impacts." *Id.* at 8. In his opinion, "The various hail-related dents to the metal roof are cosmetic and have not compromised the functionality, integrity or expected lifespan of the metal roofing panels." *Id.* Gordon further determined that "[n]o portions of the metal roof panels are uplifted, detached, or missing." *Id.* Gordon therefore opined that the property's roof "has cosmetic hail damage" and "is not wind damaged." *See id.* at 8.

On July 24, 2019, Safeco relayed Gordon's findings to Jajou, reaffirming that the damage to her property's roof would not be covered under her policy's cosmetic-damage exclusion. *See*

ECF No. 33-4, at 3. Thereafter, Jajou hired South Wind Public Adjusters to inspect her property. *See* ECF No. 33-15, at 31:10–25; *see also* ECF No. 33-4, at 3. On September 11, 2019, Southwind Public Adjusters sent Safeco an estimate claiming $398,018.35 in repairs. *See* ECF No. 33-10, at 14. The estimate included full replacement of the property's roof. *See id.* at 3–4. Southwind Public Adjusters also asked Safeco to reinspect Jajou's property. *See* ECF No. 33-4, at 3. On September 18, 2019, Doug Lehr ("Lehr")—who was then a claim specialist at Safeco—informed South Wind Public Adjusters that "metal roofing was excluded due to the cosmetic endorsement." ECF No. 33-4, at 3. South Wind Public Adjusters indicated that they understood, but nonetheless stated that they "will be pursuing the metal roof as they believe there was an issue with the agent/broker" because Jajou "at one time had the waiver on cosmetic damages but then on renewal it was not there and [Jajou] was not informed of this." *Id.*; *see also* ECF No. 33-15, at 39:23–40:4; ECF No. 42-10 ¶¶ 6–7. Ultimately, Lehr and Southwind Public Adjusters agreed to reinspect all non-roofing items on Jajou's property. ECF No. 33-4, at 3.

On September 19, 2019, Lehr and South Wind Public Adjusters reinspected all non-roofing items at Jajou's property. *See* ECF No. 33-2 ¶ 7 (citing ECF No. 33-4). Shortly after the inspection, Lehr sent Jajou a letter, informing her that Safeco had revised its estimate to reflect coverage for damages to her property's exterior elevations and two items of personal property. *See* ECF No. 33-11; *see also* ECF No. 33-4, at 2. On September 23, 2019, based on the revised estimate, Safeco issued a second payment to Jajou for $16,137.58. *See* ECF No. 33-12.

On June 5, 2020, Jajou filed suit against Safeco in the 73rd Judicial District of Bexar County, Texas. *See* ECF No. 1, at 7–14. Safeco then removed the action to this Court on the basis of diversity jurisdiction. *See id.*, at 1–4. On January 19, 2020, Jajou filed a first amended complaint. ECF No. 20. Jajou asserts claims for breach of contract; violation of sections 542.058,

541.060(a)(1)–(a)(4), 541.060(a)(7), and 541.061 of the Texas Insurance Code; violation of the Texas Deceptive Trade Practices Act ("DTPA"); and breach of the common law duty of good faith and fair dealing.[7] *See id.* ¶¶ 42–90.

On September 23, 2021, Safeco filed the instant motion for summary judgment, seeking dismissal of Jajou's extracontractual claims only. ECF No. 33. On October 14, 2021, Jajou filed a response. ECF No. 42. On October 28, 2021, Safeco filed a reply, and Jajou filed a surreply on November 15, 2021. ECF Nos. 45, 48.

## DISCUSSION

### I.  Legal Standard

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. FED. R. CIV. P. 56. "The moving party bear the initial burden of 'informing the Court of the basis of its motion' and identifying those portions of the record 'which it believes demonstrate the absence of a genuine issue of material fact.'" *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 163 (5th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To establish that there is no genuine issue of material fact, the movant must either submit evidence that negates the existence of some material element of the nonmovant's claims, or, if the crucial issue is one for which the nonmovant will bear the burden of proof at trial, point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claims. *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir. 1992), *on reh'g en banc*, 37 F.3d 1069 (5th

---

[7] Jajou cites section 17.50(a)(1)(3) of the Texas Business and Commerce Code in her first amended complaint, but no such provision exists. Based on the allegations, the Court assumes that Jajou intended to cite section 17.50(a)(3) of the Texas Business and Commerce Code. *See Cherry v. Liberty Ins. Corp.*, No. 6:17-CV-00274-RP-JCM, 2018 WL 1833252, at *6 n.1 (W.D. Tex. Feb. 1, 2018), *report and recommendation adopted*, No. 6:17-CV-274-RP-JCM, 2018 WL 4688786 (W.D. Tex. May 31, 2018) (noting same error by Jajou's counsel).

Cir. 1994). Once the moving party meets its burden, the nonmoving party must "go beyond the pleadings" and designate specific facts in the record showing that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. "[A] mere scintilla is not enough to defeat a motion for summary judgment." *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994).

To conclude that there are no genuine issues of material fact, the Court must be satisfied that no reasonable trier of fact could find for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the Court reviews all the evidence in the record, giving "credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Id.* at 150. However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003).

## II.   Analysis

Jajou asserts a claim for breach of the common law duty of good faith and fear dealing, as well as several statutory extracontractual claims under the DTPA and Chapters 541 and 542 of the Texas Insurance Code. *See* ECF No. 20 ¶¶ 42–90. Jajou's claim are based upon two theories. First, Jajou alleges that Safeco breached the duty of good faith and fair dealing and violated certain provisions of the DTPA and Texas Insurance Code by conducting an unreasonable investigation. *See id.* ¶¶ 24, 34, 40, 74, 82, 88. In her view, Safeco conducted "an outcome-oriented

investigation[.]" ECF No. 42, at 6; *see also* ECF No. 20 ¶ 39, 41, 67. Second, Jajou alleges that Safeco violated certain provisions of the Texas Insurance Code when it affirmatively misrepresented the extent of coverage under her policy by failing to include a cosmetic-damage exclusion in the homeowners insurance quote she had received from Safeco.[8] *See* ECF No. 20 ¶¶ 28, 37, 77, 82; *see also* ECF No. 42, at 14–17.

### A. Jajou's claim for breach of the common law duty of good faith and fair dealing based on Safeco's purportedly unreasonable investigation fails as a matter of law because the evidence merely shows a *bona fide* coverage dispute.

"Under Texas law, there is a duty on the part of the insurer to deal fairly and in good faith with an insured in the processing of claims." *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 459 (5th Cir. 1997) (citing *Arnold v. Nat'l Cty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987), *holding modified on other grounds by Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826 (Tex. 1990)). "To prove that an insurer acted in bad faith in violation of Texas common law, an insured must show that the insurer failed to settle the claim even though it 'knew or should have known that it was reasonably clear that the claim was covered.'" *Lee v. Catlin Specialty Ins. Co.*, 766 F. Supp. 2d 812, 818 (S.D. Tex. 2011) (quoting *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 54–55 (Tex. 1997)). "Evidence that merely shows a bona fide dispute about the insurer's liability on the contract does not rise to the level of bad faith." *Transp. Ins. Co. v. Moriel*, 879 S.W. 2d 10, 17 (Tex. 1994), *superseded by statute on other grounds as recognized in U-Haul Intl. v. Waldrip*, 380 S.W.3d 118, 140 (Tex. 2012).

An insurer may "breach its duty of good faith and fair dealing by failing to reasonably investigate a claim." *Giles*, 950 S.W.2d at 56 n.5. "The scope of the appropriate investigation will

---

[8] In its reply, Safeco objects to Jajou's second theory "as it raises issues not properly raised in her Complaint or plead with particularity as required by Federal Rule of Civil Procedure 9(b)." ECF No. 45, at 10. The Court assumes, without deciding, that Jajou's second theory is subject to and satisfies FED. R. CIV. P. 9(b).

vary with the claim's nature and value and the complexity of the factual issues involved." *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44–45 (Tex. 1998). "An insurer does not act in bad faith where a reasonable investigation reveals the claim is questionable." *United Servs. Auto. Ass'n v. Croft*, 175 S.W.3d 457, 471 (Tex. App.—Dallas 2005, no pet.).

Jajou asserts three bases for her assertion that Safeco's investigation was unreasonable. First, Jajou contends that Safeco acted unreasonably by failing to reasonably inspect her property's roof and attic. *See* ECF No. 42, at 9–11. Second, Jajou claims that Safeco acted unreasonably when it instructed Gordon to reinspect the roof with the use of a drone instead of a lift. *See id.* at 11–12. And third, Jajou argues that Safeco acted unreasonably by violating its own policies for inspecting hailstorm damage claims. *See id.* at 12–14. Based upon these three independent bases, Jajou submits that Safeco breached the duty of good faith and fair dealing.

### 1.   The evidence shows that Safeco reasonably inspected the property's roof and attic.

Jajou contends that Safeco acted unreasonably by failing to reasonably inspect her property's roof and attic. *See* ECF No. 42, at 9–11. To support her argument, Jajou relies on a third-party photo report that purportedly shows Safeco's failure "to examine metal seams which clearly were impacted by hail causing them to separate." *Id.* at 10. She also relies on her own deposition testimony to attempt to establish that Safeco failed to bring a ladder to inspect the property's roof and examine the attic for leaks. *See* ECF No. 42, at 11. Jajou testified that, on one occasion, Safeco failed to bring a ladder and, in her opinion, "didn't do the proper inspection[.]" ECF No. 33-15, at 23:2–3. She also testified that, on a separate occasion, Safeco inspected the roof with the use of a drone, but "didn't inspect the inside or the attic." *Id.* at 28:10–11, 13.

The claim file confirms that Clark-Knighton, along with the ladder assist contractor Jajou had hired, inspected the property's roof and attic. *See* ECF No. 33-4, at 5; *see also* ECF No. 33-2

¶ 5. The claim file discloses that, during the inspection on April 22, 2019, Clark-Knighton noted hail damage to the property's exterior elevations, copper gutters and downspouts, a built-in grill, an exterior post, and a stand-alone charcoal grill. *See* ECF No. 33-4, at 5. The claim file further establishes that Clark-Knighton did not inspect the property's interior because Jajou did not initially report any damages to the property's interior. *See id.* The claim file also reveals that Clark-Knighton inspected the property's roof and observed "hail damage to copper standing seam[.]" *Id.* Finally, the claim file corroborates that the contractor showed Clark-Knighton "areas in attic where decking has splintered due to hail strikes."[9] *Id.*

Thus, contrary to Jajou's contention, the evidence shows that Safeco reasonably inspected the property's roof and attic. Jajou's assertions that Safeco failed to bring a ladder and inspect the attic are unsubstantiated and therefore fail to establish a genuine issue of material fact on the question of whether Safeco conducted an unreasonable investigation by failing to reasonably inspect her property's roof and attic.[10] *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994)

---

[9] To the extent Jajou argues that Safeco's investigation was unreasonable because Clark-Knighton herself did not inspect the property's roof, her argument fails. It is undisputed that Clark-Knighton considered the contractor's findings before concluding that the damages to the property's roof were cosmetic. Thus, Clark-Knighton's failure to personally scale the property's roof would have not been detrimental to Safeco's investigation. *See Greenville Townhome Owners Ass'n, Inc. v. Phila. Indem. Ins. Co.*, 473 F. Supp. 3d 692, 697 (N.D. Tex. 2020) (finding that insurance claim adjuster's failure to personally scale roof and reliance on an expert's personal observations of roof damages is not detrimental to the investigation of insured's insurance claims nor to the reasonable basis for the insurer's decisions on those claims).

[10] The parties' briefing and the evidence cited therein fail to clearly establish the sequence of events. In its motion, Safeco submits that it is undisputed that, on April 22, 2019, Clark-Knighton, along with the ladder assist contractor Jajou had hired, inspected the property. *See* ECF No. 33, at 2. Jajou similarly submits that Safeco visited the property on April 22, 2019, *see* ECF No. 42, at 3, and the claim file confirms that Clark-Knighton and the contractor inspected the property on that day, *see* ECF No. 33-4, at 5.

However, the claim file also indicates that an inspection of Jajou's property was scheduled for April 20, 2019. *See id.* at 6. In her response, Jajou submits that Clark-Knighton conducted an initial visit, where "she failed to bring a proper ladder to gain access to the roof and did not inspect the roofing system[.]" ECF No. 42, at 2; *see also* ECF No. 33-15, at 23:2–3. The claim file appears to confirm Jajou's assertions. For instance, on April 17, 2019, Clark-Knighton entered a notation in the claim file stating the following: "Inspection schedule[d] with Ms. Jajou 4/20 @ 1pm with Ladder Now." ECF No. 33-4, at 6. Further, in its reply, Safeco cites to photographs Clark-Knighton took of the property on April 20, 2019. *See* ECF No. 45-2. Lehr also submits that he participated in a "third inspection" of Jajou's property in September 2019. ECF No. 33-2 ¶ 7 (citing ECF No. 33-4).

(citing *Celotex*, 477 U.S. at 324) ("[U]nsubstantiated assertions are not competent summary judgment evidence."); *see also Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 577 (5th Cir. 2003) (finding that appellant's "uncorroborated and conclusory testimony" is "incompetent summary judgment evidence and cannot defeat a motion for summary judgment").

### 2. Safeco's decision to use a drone instead of a lift to reinspect the property's roof was not unreasonable.

Jajou argues that Safeco acted unreasonably by opting to reinspect her property's roof with the use of a drone instead of a lift. *See* ECF No. 42, at 11–12. The evidence establishes that Safeco hired Gordon to reinspect the property's roof and that Safeco specifically directed Gordon to reinspect the roof with the use of a drone instead of a lift. *See* ECF No. 42-6, at 2. Safeco made this decision after Gordon had advised Safeco that the drone would cost approximately $500 and that "a lift that would give [him] access to the other portions of the roof" would be "much more expensive[.]" *Id.* "By not using the lift[,]" Jajou contends, "Gordon failed to closely examine the seams of [her property's] roof and instead based his report on drone photos." ECF No. 42, at 12.

The evidence, however, shows that Gordon did examine the seams of the property's roof. In his report, Gordon stated, "The metal roof panel seams along the ridges, hips, and roof slopes have circular dents approximately 1/4 inch in diameter (Photographs 27 through 37)." ECF No. 33-9, at 4. Gordon also wrote that "[t]he metal roof panels and panel seams throughout the house contain circular dents consistent with hail damage." *Id.* at 8. In his opinion, "No portions of the roof panels or panel seams are punctured or penetrated due to the hail impacts." *Id.* "An insurance company's obligation to investigate is obviously not unlimited." *Simmons*, 963 S.W.2d at 44.

Thus, the evidence tends to show that Clark-Knighton conducted at least one inspection prior to April 22, 2019, likely without a ladder. Nonetheless, the evidence also establishes that, on at least one occasion, Clark-Knighton inspected the property's roof and attic, if not on April 20, 2019, when she photographed the roof, then on April 22, 2019, when she inspected the property with the ladder assist contractor Jajou had hired.

"Ultimately, insurers do not have a 'duty to leave no stone unturned[.]'" *Thompson v. Zurich Am. Ins. Co.*, 664 F.3d 62, 70–71 (5th Cir. 2011) (quoting *State Farm Lloyds, Inc. v. Polasek*, 847 S.W.2d 279, 288 (Tex. App.—San Antonio 1992, writ denied))).

Further, to establish bad faith, Jajou "must show, not an expert's unreasonableness, but that the omission in the expert's investigation is of such magnitude as to affirmatively cast doubt on the insurer's basis for denial." *Id.* at 68 (citing *Lyons v. Millers Cas. Ins. Co. of Texas*, 866 S.W.2d 597, 601 n.3 (Tex. 1993)). The evidence in this case shows that, prior to hiring Gordon, Safeco had reasonably inspected the property's roof and attic. *See* ECF No. 33-4, at 5–6. Unsatisfied with Safeco's investigation and claim decision, however, Jajou sent Safeco a letter in May 2019, stating that she had "met with several individuals including real estate appraisers, structural engineers and construction professionals who all agree that [her roof has] structural damage." ECF No. 33-7, at 2. Jajou informed Safeco that she would "not settle for anything less than a new roof" and demanded another inspection. *Id.*

Then, in June 2019, Jajou sent Safeco a signed agreement between her and Rooftop Restoration disclosing a contract for services to replace her property's roof. *See* ECF No. 33-8. In response, Safeco reopened Jajou's claim and assigned Gordon to reinspect her property's roof. *See* ECF No. 33-2 ¶ 6 (citing ECF No. 33-4); *see also* ECF No. 42-6, at 2. Under these circumstances and absent any evidence to the contrary, Safeco's decision to use a drone instead of a lift to reinspect the property's roof is not of such magnitude as to affirmatively cast doubt on Safeco's basis for denying Jajou's claim for damages to her roof. Safeco's decision to use a drone instead of a lift simply establishes a difference of opinion between Safeco and Jajou on the best method for reinspecting the property's roof, not that Safeco conducted an unreasonable investigation.

Therefore, Jajou has failed to show that Safeco acted unreasonably by opting to use a drone instead of a lift to reinspect her property's roof.[11]

### 3. Safeco did not violate its own inspection policies.

Finally, Jajou contends that Safeco acted unreasonably by violating its own inspection policies. *See* ECF No. 42, at 12–14. To support her argument, Jajou cites a Job Aid manual Safeco purportedly uses for guidance.[12] *See* ECF No. 42-13. According to Jajou, Safeco failed to comply with the requirements listed in the manual when Clark-Knighton did not bring a ladder during her initial inspection and failed to "take close up photos" of the hail damage and curling on the roof. ECF No. 42, at 13. Jajou further argues that Safeco failed to comply with its own policies when it did not "investigate the interior attic for water damage and as a result failed to locate interior leaks"

---

[11] Jajou also briefly asserts that Safeco's investigation "was unreasonable because Gordon failed to use industry standard definitions when evaluating whether [her] roof had functional damage." ECF No. 42, at 12. She relies on her expert, David Day, who submits that "the use of policy language to describe the type of damage sustained in Gordon's report is suspect and in conflict with definitions provided by Haag, J.S., and even Donan's own definition provided within their report." ECF No. 42-1 ¶ 6. Based on Day's opinion, Jajou argues that "Gordon failed to properly analyze the damage and instead attempted to ensure [Safeco's] policy language matched his report in a pre-textual effort to support [Safeco's] stance that no functional damage exists." ECF No. 42, at 12. In other words, Jajou contends that Gordon's inspection was outcome oriented.

To be sure, an insurer's reliance on an expert's report supports a finding of bad faith if "the insurer's reliance on the report was unreasonable." *State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 448 (Tex. 1997). However, Day's opinion that Gordon's use of certain words in his report is "suspect" and fails to conform with purported industry standards is insufficient to establish a genuine issue for trial on the question of whether Safeco's investigation was unreasonable. *See Simmons*, 963 S.W.2d at 44–45 ("The scope of the appropriate investigation will vary with the claim's nature and value and the complexity of the factual issues involved."). Safeco hired Gordon to reinspect the property's roof because Jajou had demanded a reinspection and submitted a signed agreement disclosing a contract for services to replace her property's roof. *See* ECF No. 33-2 ¶ 6 (citing ECF No. 33-4); *see also* ECF Nos. 33-8, 42-6, at 2. But, before doing so, Safeco had already reasonably inspected the property's roof. *See* ECF No. 33-4, at 5–6.

Moreover, both parties understood that Safeco had denied Jajou's claim for damages to her property's roof based on the cosmetic-damage exclusion in the policy. *See* ECF No. 33-4, at 5. It is therefore not unreasonable for Gordon to have approached his inspection and report towards forming an opinion on whether the damages were cosmetic. The fact that Gordon used policy language in preparing his report does not, in and of itself, show that his report was not objectively prepared or that Safeco's reliance on the report was unreasonable.

[12] Jajou filed the Job Aid manual under seal pursuant to the confidentiality and protective order governing this case. *See* ECF No. 43. Jajou submits that she "has cited to this document in broad terms in an effort to comply with the Protective Order." ECF No. 42, at 2 n.7.

during its second inspection. *Id.* Jajou also submits that Safeco violated its own inspection policies "when it declined to use a lift for Gordon to access the roof and instead used a drone." *Id.*

As a threshold matter, Jajou fails to include any affidavit or declaration confirming that the Job Aid manual she cites is, in fact, a manual that Safeco uses for guidance, casting significant doubt as to whether the manual constitutes competent summary judgment evidence. *See* FED. R. CIV. P. 56; *see also Nino v. State Farm Lloyds*, No. 7:13-CV-318, 2014 WL 6674418, at *6 (S.D. Tex. Nov. 24, 2014) ("The Court is not responsible for locating the evidentiary support Plaintiff herself did not see fit to adequately present."). But, even if Safeco does rely on the Job Aid manual for guidance, the evidence shows that Safeco, at some point, did inspect and photograph the property's roof and attic with the use of a ladder. *See* ECF No. 33-4, at 5; *see also* ECF No. 33-2 ¶ 5. Indeed, the claim file specifically notes that Clark-Knighton, along with the ladder assist contractor Jajou had hired, inspected the property's roof and attic. *See* ECF No. 33-4, at 5. There is also evidence showing that Clark-Knighton photographed the property's roof and attic on April 20, 2019. *See* ECF No. 45-2.

Moreover, the Job Aid manual only requires that claim estimators investigate, at minimum, the type and age of the roof, whether the roof is leaking, and whether shingles are missing. *See* ECF No. 42-13, at 54. The claim file confirms that Clark-Knighton investigated each of these minimum requirements and then concluded that "there were no leaks and no damage to seams – roof damage is cosmetic only." ECF No. 33-4, at 5. Any other purported requirement in the manual Jajou may rely upon to contend that Safeco violated its own inspection policies are, per the manual's own language, merely "suggested follow-up questions." ECF No. 42-13, at 54. "[T]here is no indication that these are binding procedures on [Safeco] or its adjusters[.]"[13] *Nino*, 2014 WL

---

[13] Jajou relies on *USAA Tex. Lloyd's Co. v. Griffith*, No. 13-17-00337-CV, 2019 WL 2611015, at *1 (Tex. App.—Corpus Christi June 26, 2019, pet. filed) (mem. op.), in arguing that an insurer's failure to follow its

6674418, at *6. Indeed, Jajou cites no requirement in the manual that obligated Safeco to use a lift instead of a drone to reinspect her property's roof. On the contrary, the manual explicitly asserts that "[e]ach claim should be handled on its own merits with all applicable forms and endorsements considered." ECF No. 42-13, at 2. Elsewhere, the manual provides, "Each claim should be evaluated on its own merit, and there may be exceptions to the estimating guidelines detailed in this document based on jurisdictional issues, unique damage situations or products."[14] *Id.* at 21.

Thus, Jajou's argument that Safeco acted unreasonably by failing to comply with its own inspection policies fails.

In sum, contrary to Jajou's unsubstantiated assertion, Safeco, upon notice, reasonably inspected her property's roof and attic. Though Jajou would have preferred that Gordon use a lift to reinspect her property's roof, instructing Gordon to instead use a drone fails to show that Safeco acted unreasonably. And even if the Job Aid manual Jajou relies upon constitutes competent evidence of Safeco's inspection policies, the evidence shows that Safeco complied with the minimum requirements listed in the manual. The evidence merely shows a *bona fide* coverage dispute. "Evidence establishing only a bona fide coverage dispute does not demonstrate bad faith."

---

recommended policies is sufficient evidence for a jury to find that Safeco acted unreasonably. *See* ECF No. 48, at 8. The order Jajou relies upon, however, was withdrawn and the judgment vacated upon review. Even if the order had not been withdrawn and the judgment vacated, the *Griffith* court upheld the jury's finding of bad faith for several reasons, not solely because the insurer failed to comply with its recommended policies. *See id.* at *5–10.

[14] To advance her argument, Jajou also relies heavily on *Allstate Vehicle & Prop. Ins. Co. v. Reininger*, No. 04-19-00443-CV, 2021 WL 2445622 (Tex. App.—San Antonio June 16, 2021, pet. denied) (mem. op.). In *Reininger*, the court considered whether a reasonable jury could conclude, based on the evidence presented, that Allstate had engaged in an unfair or deceptive act or practice by, *inter alia*, refusing to pay the claim without conducting a reasonable investigation. *Id.* at *3. The undisputed evidence in that case "showed that if an insured disagrees with an adjustor's finding of cosmetic damage, Allstate's policies require the adjustor to request a report from a structural engineer." *Id.* The undisputed evidence also showed that Allstate "did not request a report from a structural engineer despite Reininger's disagreement with the finding of only cosmetic damage." *Id.* "This evidence[,]" the court concluded, "supports a finding that Allstate was required to, but did not, request a report from a structural engineer regarding Reininger's fail damage claim before denying the claim." *Id.* The court accordingly held, "Based on this evidence, a reasonable factfinder could conclude that Allstate refused to pay Reininger's claim without conducting a reasonable investigation." *Id.* at *4. The facts in this case, however, fail to confirm that Safeco, like Allstate, did not comply with any minimum requirements listed in the Job Aid manual Safeco purportedly uses for guidance.

*Simmons*, 963 S.W.2d at 44. Therefore, there is no genuine issue for trial on Jajou's claim for breach of the common law duty of good faith and fair dealing based on her argument that Safeco conducted an unreasonable investigation. As a result, Safeco is entitled to summary judgment on Jajou's bad faith claim as a matter of law.[15]

### B. Jajou's statutory extracontractual claims based on Safeco's purported misrepresentation fail as a matter of law because the evidence shows that Jajou was simply mistaken about the scope of coverage under her policy.

An affirmative misrepresentation of insurance coverage may give rise to claims under the DTPA and the Texas Insurance Code. *Wyly v. Integrity Ins. Sols.*, 502 S.W.3d 901, 907 (Tex. App.—Houston [14th Dist.] 2016, no pet.). The insured must "point to an express misrepresentation or an omission relating to an insurance policy that the insurer allegedly made." *Ramirez v. GEICO*, 548 S.W.3d 761, 775 (Tex. App.—El Paso 2018, pet. denied). "[A]bsent an affirmative misrepresentation, an insured's mistaken belief about the scope of coverage is not actionable under the DTPA [or] the Texas Insurance Code[.]" *Wyly*, 502 S.W.3d at 908.

Here, Jajou contends that Safeco made an affirmative representation when it sent her an "insurance quote containing material terms of the policy without a cosmetic damage exclusion included." ECF No. 42, at 14. Jajou submits that "[t]he insurance quote contained all the vital terms a policy would normally contain including the premium price, the deductible cost, the covered property, the length of the contract, payment methods, policy limit, and a breakdown of coverage." *Id.* at 15. She claims that she "relied on this representation of what would be covered by Safeco under the Policy and the coverage she would receive for her premium payments." *Id.*

---

[15] In her first amended complaint, Jajou alleges that Safeco breached the duty of good faith and fair dealing by also "wrongfully underpaying the Claim" and "misleading Plaintiff that its claim was estopped[,] denying and delaying payment on the Claim when Defendant knew or should have known liability was reasonably clear." ECF No. 20 ¶ 88. Jajou, however, fails to argue that genuine issues of material fact exist based on either of these two theories. *See generally* ECF Nos. 42, 48. To the extent Jajou contends that Safeco acted in bad faith because its purportedly unreasonable investigation resulted in an underpayment and/or misled her about the status of her claim, her argument fails given the Court's finding that Jajou has failed to present evidence that Safeco acted unreasonably.

The evidence shows that Jajou originally purchased an insurance policy with Allstate to insure her property. *See* ECF No. 33-15, at 15:3–4. At some point thereafter, Jajou switched insurance companies and insured her property with Farmers.[16] *See id.* at 19:1–4. Farmers then sold Jajou's contract to Safeco. *See id.* at 20:2–3, 22–24. On or about November 7, 2017, Jajou received from Safeco the homeowners insurance quote that, she argues, should have included a cosmetic-damage exclusion. *See* ECF No. 42-11, at 3. Jajou correctly submits that the quote summarized the primary and optional coverages, deductibles, and premiums Safeco offered. *See id.* at 3–4. The quote also proposed a policy period from November 7, 2017 to November 7, 2018. *See id.* at 3.

Yet, it was not until on or about September 27, 2018, nearly one year later, that Jajou decided to renew her policy directly with Safeco. *See* ECF No. 33-3, at 3. While Jajou submits that she would have not signed a contract with Safeco if she had been informed that the policy would not cover cosmetic damages, *see* ECF No. 42-10 ¶ 7, there is no dispute that the renewed policy explicitly and clearly included an exclusion for cosmetic damages. Jajou testified at her deposition that she never read the policy. *See id.* at 25:6–8. Jajou also acknowledged that she could have called Safeco upon receiving the quote. *See id.* at 27:14–16. These undisputed facts fail to show that Safeco's omission of a cosmetic-damage exclusion provision in the quote constitutes an affirmative misrepresentation. Rather, the evidence indicates that Jajou was simply mistaken about the scope of coverage—a mistake that is not actionable under the DTPA or Texas Insurance Code. *See Glenn v. L. Ray Calhoun & Co.*, 83 F. Supp. 3d 733, 749 (W.D. Tex. 2015) (citing *Ruiz v. Gov't Emps. Ins. Co.*, 4 S.W.3d 838, 841 (Tex. App.—El Paso 1999, no pet.); *Garrison Contractors, Inc. v. Liberty Mut. Ins. Co.*, 927 S.W.2d 296, 300 (Tex. App.—El Paso 1996, pet.

---

[16] At her deposition, Jajou testified that her policy with Farmers did not contain an exclusion for cosmetic damages. *See* ECF No. 33-15, at 25:15–17.

granted), *aff'd*, 966 S.W.2d 482 (Tex. 1998)) ("Texas courts have declined to impose on an insurance agent a duty to explain policy terms to an insured.").

As a result, Jajou's statutory extracontractual claims based on Safeco's purported misrepresentation fail as a matter of law.

**C. Jajou's extracontractual claim under the DTPA and some of her extracontractual claims under Chapter 541 of the Texas Insurance Code fail as a matter of law because they are premised upon the same theory underlying her claim for breach of the common law duty of good faith and fair dealing.**

"Under the DTPA, a consumer may bring an action when [s]he has relied to [her] detriment on a false or misleading representation, and the reliance is a producing cause of economic damages." *Am. Home Shield of Tex., Inc. v. Kortz*, No. 01-99-00380-CV, 2000 WL 1262617, at *3 (Tex. App.—Houston [1st Dist.] Sept. 7, 2000, pet. dism'd) (citing TEX. BUS. & COM. CODE § 17.50(a)). As is relevant here, "[s]ection 17.50(a)(3) provides a cause of action for a consumer that suffers damages resulting from 'any unconscionable action.'" *CapLOC LLC v. Liberty Mut. Ins. Eur. Ltd.*, No. 3:20-CV-3372-B, 2021 WL 2551591, at *11 (N.D. Tex. June 22, 2021) (quoting TEX. BUS. & COM. CODE § 17.50(a)(3)). Further, an insured may bring a private action based on unfair settlement practices against its insurer under Chapter 541 of the Texas Insurance Code. *See* TEX. INS. CODE § 541.151.

Safeco seeks summary judgment on Jajou's extracontractual claims under the DTPA and Texas Insurance Code, arguing that the failure of Jajou's claim for breach of the common law duty of good faith and fair dealing necessarily establishes that her claims under the DTPA and Texas Insurance Code also fail. *See* ECF No. 33, at 4–7. In Safeco's view, "evidence establishing only a *bona fide* coverage dispute does not demonstrate that a breach of the insurer's statutory duties as a matter of law." *Id.* at 5.

To be sure, as with a bad faith claim, a reasonable basis for denying an insurance claim may also be a defense to claims under the DTPA and Texas Insurance Code. *Greenville Townhome Owners Ass'n, Inc. v. Phila. Indem. Ins. Co.*, 473 F. Supp. 3d 692, 699 (N.D. Tex. 2020) (citing *Emmert v. Progressive Cnty. Mut. Ins. Co.*, 882 S.W.2d 32, 36 (Tex. App.—Tyler 1994, writ denied)). "The insurer, 'will not be faced with a tort suit for challenging a claim of coverage if there was any reasonable basis for denial of that coverage.'" *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 525 (5th Cir. 2015) (quoting *Henry v. Mut. of Omaha Ins. Co.*, 503 F.3d 425, 429 (5th Cir. 2007)). However, "the extracontractual claim must share 'the same predicate for recovery as bad faith causes of action in Texas.'" *Hall Arts Ctr. Off., LLC v. Hanover Ins. Co.*, 327 F. Supp. 3d 979, 1000 (N.D. Tex. 2018) (quoting *Higginbotham*, 103 F.3d at 460). Put differently, the "claim must be 'based on the same theory which underlies the bad faith claim.'" *Greenville*, 473 F. Supp. 3d at 699 (quoting *State Farm Fire & Cas. Co. v. Woods*, 925 F. Supp. 1174, 1180 (E.D. Tex. 1996), *aff'd*, 129 F.3d 607 (5th Cir. 1997)). Thus, contrary to Safeco's broad contention that summary judgment on Jajou's statutory extracontractual claims is proper simply because a *bona fide* coverage exists, the relevant question is whether the same theory underlies both the bad faith claim and the asserted statutory extracontractual claims.

Here, Jajou's theory of liability for her bad faith claim is that Safeco failed to conduct a reasonable investigation. Indeed, Jajou's briefing focuses almost exclusively on why, in her view, Safeco's investigation was unreasonable. *See* ECF Nos. 42, 48. Jajou's allegations in her first amended complaint also indicate that some of her Chapter 541 claims are premised upon the theory that Safeco failed to conduct a reasonable investigation. For instance, Jajou alleges that Safeco violated section 541.060 by misrepresenting that the damage to her property's roof "was cosmetic in nature" and not covered under her policy. ECF No. 20 ¶ 61. This alleged misrepresentation

arises directly from Safeco's purportedly unreasonable investigation. Jajou also alleges that Safeco violated section 541.060(a)(2) by "failing to properly investigate the interior damage; misrepresenting to Plaintiff that the roof damage was cosmetic in nature; hiring an engineer in an effort to solely deny Plaintiff's claim, despite clear evidence to the contrary; and failing to write an estimate that included interior damage." *Id.* ¶ 64. Her allegations with respect to her section 541.060(a)(7) claim are substantively and substantially similar. *See id.* ¶ 74. It is self-evident that the allegations supporting these claims concern Safeco's purportedly unreasonable investigation.

In addition, Jajou alleges that Safeco violated section 541.060(a)(3) because it "failed to promptly provide Plaintiff a reasonable explanation of the basis for Defendant's denial of the claim." *Id.* ¶ 67. In support of this claim, Jajou alleges that Safeco based its coverage decision on its adjusters' and Gordon's outcome-oriented investigation. *Id.* She further alleges that Safeco failed to explain both how Gordon's report can assert that her property's roof merely sustained cosmetic damage if it shows "significant hail impact damage" and "why the interior water damage was not covered." *Id.* These allegations show that Jajou's section 541.060(a)(3) claim is premised upon Safeco's purportedly unreasonable investigation.

As for her claims under section 541.061 and the DTPA, Jajou fails to allege specific facts disclosing the theory that underlies these claims.[17] *See id.* ¶¶ 76–84. Nonetheless, Jajou's allegations in her first amended complaint and arguments in her briefing indicate that the only plausible theory underlying these claims is Safeco's purportedly unreasonable investigation.

---

[17] The only other theory Jajou presents in her briefing is Safeco's purported misrepresentation upon omitting a cosmetic-damage exclusion provision in the quote she had received from Safeco. The Court, however, has found that Jajou's statutory extracontractual claims based on Safeco's purported misrepresentation fail as a matter of law because the evidence shows that Jajou was simply mistaken about the scope of coverage. Thus, to the extent her claims under section 541.061 and the DTPA are premised upon this alternative theory, they likewise fail.

The same theory, however, does not underlie Jajou's claims under sections 541.060(a)(4) and 542.058. These claims implicate Safeco's alleged failure to affirm or deny coverage within a reasonable time and Safeco's alleged failure to issue prompt payment. *See* Tex. Ins. Code §§ 541.060(a)(4), 542.058. Safeco does not argue that Jajou's claims under sections 541.060(a)(4) and 542.058 are premised upon the same theory underlying her bad faith claim. Thus, "it is not apparent that [Safeco's] reasonable basis for denying [Jajou's] claim automatically absolves it of liability regarding the promptness of making a determination." *Hall Arts*, 327 F. Supp. 3d at 1000. Safeco has also failed to present any argument for summary judgment of these claims based on any other grounds. These claims, therefore, may proceed to trial. *See Olschwanger v. State Farm Lloyds*, No. 4:19-CV-933-SDJ-CAN, 2021 WL 3877689, at *4 (E.D. Tex. July 30, 2021), *report and recommendation adopted*, No. 4:19-CV-933-SDJ, 2021 WL 3858061 (E.D. Tex. Aug. 30, 2021) ("Given Defendant's acknowledgement that Plaintiffs' claim for breach of contract should proceed to trial, and as no argument for summary judgment is made on Plaintiffs' claim under [section] 542.058 of the Texas Insurance Code, both claims should proceed to trial.").

As a result, the Court finds that Safeco is entitled to summary judgment on Jajou's claims under the DTPA and sections 541.060(a)(1), 541.060(a)(2), 541.060(a)(3), 541.060(a)(7), and 541.061—but not sections 541.060(a)(4) and 542.058—of the Texas Insurance Code.

## CONCLUSION

Accordingly, Defendant's Motion for Summary Judgment Regarding Extra-Contractual Claims (ECF No. 33) is hereby **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's extracontractual claims for violation of sections 541.060(a)(1), 541.060(a)(2), 541.060(a)(3), 541.060(a)(7) and 541.061 of the Texas Insurance Code; violation of the DTPA pursuant to section 17.50(a)(3) of the Texas Business and Commerce Code; and breach of the duty of good faith and

21

fair dealing are **DISMISSED WITH PREJUDICE**. Plaintiff's breach of contract claim and extracontractual claims for violation of sections 541.060(a)(4) and 542.058 may proceed to trial.

It is so **ORDERED**.

**SIGNED** this January 24, 2022.

_____

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE